Matthias, J.
The indictment in this case was based upon the provisions of Section 12842, General Code, which are as follows: “Whoever, either orally or in writing, on oath lawfully administered, wilfully and corruptly states a falsehood as to a material matter in a proceeding before a court, tribunal or officer created by law, or in a matter in relation to which an oath is authorized by law * * * is guilty of perjury and shall be imprisoned,” etc.
The trial court sustained the demurrer of the defendant to the indictment upon the ground that perjury cannot be predicated upon an oath taken by a secretary of a building and loan association to the report required by law to be filed with the state inspector of building and loan associations. That conclusion followed from the opinion of that court that the wrongful action sought to be charged against the defendant in the indictment comes within the provisions of Section 13190, General Code, and, therefore, that the defendant would not be amenable to the *239 provisions of Section 12842, General Code, the perjury statute, for the reason (quoting the language of the trial court) that “where there is. a general statute covering a subject and a special law applying to some particular phase of the subject, the latter governs and must be applied when a case is within the provisions of the special act.”
Section 13190, General Code, is as follows: “Whoever, being a member of a board of directors of a building and loan association or savings association,' as provided by law, certifies to, or makes a false entry on a book, report or statement. of or to such association, with intent to deceive, injure or defraud it or another company, body politic or corporate or person, or to deceive any one appointed to examine the affairs of such association, shall be imprisoned,” etc.
It will be observed that under the provisions of this section, only “whoever being a member of a board of directors,” etc., is punishable in the manner therein provided for the acts enumerated in this section, and that the secretary is not included within its terms or referred to by any of its provisions. That officer was named in the original act, but when the statutes were codified and reenacted in 1910, the original act was divided into several sections, and although in other of those sections the secretary was named among those officers of a building and loan association, and he is amenable to the provisions thereof, and criminally liable for certain acts therein described, he is not named nor referred to in Section 13190, General Code, as appears from that section as above quoted. It is urged, and this was the view of the trial court, that the original *240 act may be looked to in the construction of Section 13190, General Code, and therefrom it is concluded that it was the legislative intent that Section 13190 includes not only the officers specified therein, but also the secretary because he was named in the original act.
•This is stretching a rule of construction to the breaking point. It is erroneous to treat the new statute as the act merely of the codifying commission. It was duly enacted by the general assembly, and the provisions previously in force were repealed. The rule frequently announced and applied in numerous cases is that where the general statutes of the state are revised and consolidated there is a strong presumption that the same construction which the statute received before revision should be applied to the enactment in its revised form though the language may have been changed, and the same construction will prevail unless the language of the new act requires a change of construction to conform to the manifest intent of the legislature. State, ex rel. 3. P. Clough & Co., v. Commissioners of Shelby Co., 36 Ohio St., 326; Allen v. Russell, 39 Ohio St., 336; Heck v. State, 44 Ohio St., 536; State, ex rel. Baumgardner, v. Stockley, 45 Ohio St., 304, 308; State v. Toney, 81 Ohio St., 130, and B. & O. Rd. Co. v. Nobil, 85 Ohio St., 175.
This, however, is a rule of construction to be employed where the language used is of doubtful import. The principle is well established, and is supported by this court in each of the cases above cited, that where the language is clear, plain and easily understood, the court is not warranted in inserting in a statute, and particularly a criminal statute, a *241 provision which would extend its scope and make it applicable to those not included within its terms. It is elementary that such a provision is always to be strictly construed.
“If a revision or code is plain and unambiguous it must be construed by itself and without resort to the original or prior acts which have been brought into it.” 2 Sutherland on Statutory Construction (2 ed.), Section 450.
Where there is no ambiguity, no construction by the court is required or justified. The provisions of prior acts may be resorted to for the purpose of clearing up, but never to create an ambiguity. There can be no question as to the meaning of the language used in Section 13190, General Code. It requires no interpretation, and reference to the original act only raises a doubt where otherwise none exists.
The rule applicable here was well stated by Min-shall, J., in the case of Heck v. State, 44 Ohio St., 536, when he said: “Where the language used in a revised statute is of such doubtful import as to call for a construction, it is both reasonable and usual to refer to the statute or statutes from which the revision has been made. But where the language is plain, and leads to no absurd or improbable results, there is no room for construction, and it is the duty of the courts to give it the effect required by the plain and ordinary signification of the words used, whatever may have been the language of the prior statute, or the construction placed upon it. * * * If the plain language of a revised statute is to be departed from, whenever the language of the prior one may require it, then it may be asked, what is *242 gained by a revision? The definition of crimes must, in such cases, be sought, not in the statutes as they are found to exist, but in the language of those that have been repealed. The more rational rule must be, as we think, to resort to the prior statute for the purpose of removing doubts, not for the purpose of raising them.”
But if we were to assume that the secretary is amenable to the provisions of Section 13190, General Code, and may be punished as provided therein for making false entry in a book, report or statement, etc., for the purpose and with the intent therein stated, it would not follow that he may not also be prosecuted and convicted of the crime of perjury where the facts warrant, for the act of swearing to a statement which contains, a false entry, or a number of false entries, even though made by the secretary himself, is a separate and distinct act, and if the other elements of the offense of perjury are properly charged and duly established he may be punished for that offense also. The act of making a false entry is complete when such entry, known to be false by the one making it, is inserted by him in the record, report or statement with unlawful intent. The legislature in the same act wherein the making of such false entry is made an offense, presumably with the desire, purpose and expectation of adding some further security and safeguard in behalf of those whom such legislation was enacted to protect, provided that the report required to be made annually by every building and loan association should be sworn to by the secretary. The secretary may have had nothing whatever to do with the preparation of the report or the making of the *243 false entry which became a part thereof. He is not required by law to prepare such report, but the law does specifically require that “it shall be sworn to by the secretary.” It clearly follows that the action of the secretary of a building and loan association in knowingly and wilfully making a false statement upon oath duly administered, in a material matter, such as the assets or liabilities of the association, in a report required by law to be made and filed with the inspector of building and loan associations of the state of Ohio, constitutes peijury, and an indictment for such offense is authorized by the provisions of Section 12842, General Code.
It is urged, however, that there are other defects and omissions in the indictment, and that although the court may have been wrong as to its reason it was right as to its judgment. It is contended that the indictment is defective in that it does not contain averments essential to charge the crime of perjury, because of the absence of an allegation that such report was attested by the directors or auditing committee of the People’s Building and Loan Company as required by law, and that said report was filed with the inspector of building and loan associations of the state.
It is alleged in the indictment that the report was prepared by the defendant as secretary of said building and loan company upon the form of report prescribed by the inspector of building and loan associations of Ohio, and purported to set out the information required by the state inspector of building and loan associations under authority of Sections 682 and 683, General Code; and that after the *244 same was prepared and sworn to it was filed with the inspector of building and loan associations of the state of Ohio. This indictment contains averments which clearly, definitely and amply charge that the defendant, on oath lawfully administered, wilfully and corruptly stated a falsehood as to a material' matter and one in relation to which an oath is authorized by law.
The trial court, therefore, erred in sustaining the demurrer to the indictment, and the exceptions of the prosecuting attorney to that ruling are sustained.

Exceptions sustained.

Marshall, C. J., Johnson, Hough, Wanamaker, Robinson and Jones, JJ., concur.